Shwab v. Walters.

## J. Buist Shwab *et al. v.* H. C. Walters *et al.*\*

## (*Nashville.* December Term, 1922.)

1. **EQUITY.** Chancery court has concurrent jurisdiction of suits for fraud and deceit.

Under Acts 1915, chapter 47, amending Acts 1877, chapter 97, and proving that jurisdiction of all civil causes of action now triable in the circuit court, except for unliquidated damages for injuries to person or character and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract, is conferred upon the chancery court, which shall have and exercise concurrent jurisdiction thereof along with the circuit court, the chancery court has jurisdiction of a suit for fraud and deceit. (*Post, pp.* 640, 641.)

Acts cited and construed:   Acts 1877, ch. 97; Acts 1915, ch. 47.

Case cited and approved:   Ellett v. Embury & Maury, 142 Tenn., 444.

Case cited and distinguished: Swift v. Warehouse Co., 128 Tenn., 82.

2. **FRAUD.** False statements as to financial condition of corporation submitted to purchasers of stock held actionable fraud.

In a suit to recover damages for false statements as to the financial condition of a corporation, in which plaintiffs bought stock from defendants, where it appeared that before the plaintiffs would buy they demanded an audit of the company's business, and the defendants stated to the auditors that the list of debts submitted was complete, knowing that such list was to be submitted to the plaintiffs, and that plaintiffs acted on the information thus acquired, which proved untrue, the defendants became liable for damages, though the plaintiffs made some personal investigation and considered matters other than the audit, and the defendant

---

\*The measure of damages for misrepresenting value of corporate stock sold is discussed in note in 43 L. R. A. (N. S.), 373.

On false statements in reports required by stautes, to be made to public officials as basis of action by individuals against corporate directors see note in 6 L. R. A. (N. S.), 872.

On jurisdiction of equity to cancel instruments on ground of fraud see note in 5 L. R. A. (N. S.), 1036.

Shwab v. Walters.

who acted for the other defendants in approving the audit stated that which he did not know. (*Post, pp.* 641-644.)

Cases cited and approved: Horrigan v. First Nat. Bank, 68 Tenn., 137; Hindman v. First Nat. Bank, 112 Fed., 931.

Case cited and distinguished: Wynne v. Allen, 66 Tenn., 312.

3. **FRAUD.** False representation essential to sustain action; "fraud."
To sustain an action of deceit there must be proof of fraud, and "fraud" is proved when it is shown that a false representation has been made knowingly, or without belief in its truth, or recklessly, careless whether it be true or false. (*Post, pp.* 644, 645.)

Case cited and approved: Derry v. Peek, L. R., 14 App. Cas., 337.

4. **FRAUD.** Measure of damages for misrepresenting value of stock stated.
The measure of damages for misrepresenting the value of corporate stock sold is the difference between its actual value and its value had the facts been as represented, and in estimating recovery the court should look to the real value of the stock rather than its market value. (*Post, pp.* 645, 646.)

Cases cited and approved: Hogg v. Cardwell, 36 Tenn., 151; Smith v. Cozart, 39 Tenn., 526; Augur v. Smith, 90 Tenn., 729; Blair v A. Johnson & Sons, 111 Tenn., 111.


FROM DAVIDSON.


Appeal from the Chancery Court of Davidson County.— HON. JAS. B. NEWMAN, Chancellor.

CLARENCE T. BOYD and CURRELL VANCE, for appellants.

CHAS. CORNELIUS and E. J. WALSH, for appellees.

Mr. Chief Justice Green delivered the opinion of the Court.

This is an action of fraud and deceit brought in the chancery court to recover damages for false statements alleged to have been made as to the financial condition of a corporation in which the complainants bought stock from the defendants. There was a decree for the complainants below, and the defendants have appealed to this court.

A preliminary question of the jurisdiction of the chancery court in Tennessee to entertain such an action is made by the defendants. This objection to the jurisdiction must be overruled.

Chapter 97 of the Acts of 1877 conferred upon the chancery court in this State jurisdiction of all civil cases triable in the circuit court, except suits "for injuries to person, property or character, involving unliquidated damages."

To meet a construction of this statute made in *Swift v. Warehouse Co.,* 128 Tenn., 82, 158 S. W., 480, by chapter 47 of the Acts of 1915, the legislature further enlarged the jurisdiction of the chancery court as follows:

"That jurisdiction of all civil causes of action now triable in the circuit court, except for unliquidated damages for injuries to person or character and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract, is hereby conferred upon the chancery court, which shall have and exercise concurrent jurisdiction thereof along with the circuit court."

Under these broad provisions it is obvious that the chancery court does have jurisdiction of a suit such as the one before us. Actions for fraud and deceit, like this one,

have been constantly heard in the chancery court in this State since the passage of chapter 97 of the Acts of 1877. If any doubt was thrown upon chancery jurisdiction of such cases by *Swift* v. *Warehouse Co.*, supra, it was removed by chapter 47 of the Acts of 1915.

The statement that the chancery court had no jurisdiction of a suit for fraud and deceit made in *Ellett* v. *Embury & Maury,* 142 Tenn., 444, 217 S. W., 818, was doubtless an inadvertence. The facts of the case do not very fully appear. At any rate, the cross-bill seeking damages for fraud and deceit was dismissed on another ground, and the remark about the jurisdiction of the chancery court was not necessary to a decision of that case.

The defendants, Walters, Elliston, and Leake, together with complainant Campbell formerly owned all the stock (except one share) in the Public Service Tire Company, a corporation organized under the laws of this state, located at Nashville and capitalized at $20,000. Each of these parties owned one-fourth of the stock.

After some negotiations, Campbell became associated with complainant Shwab, and these two purchased the stock of Walters, Elliston, and Leake.

The proof shows that Campbell was an outside employee, traveling for the concern, and knew little about the methods of bookkeeping employed. The books were kept by Walters principally, sometimes assisted by Elliston. Walters appears to have acted for the defendants very largely in arranging and concluding this sale of stock.

Before the complainants would buy, they demanded an audit of the company's business, and Grannis and Blair, a firm of expert accountants, were employed by the com-

147 Tenn.—41

plainants to make this audit. The defendants knew for what purpose this firm was employed, knew that the audit was being made and would be relied on by the complainants, and the defendants, particularly defendant Walters, undertook to assist in the audit. It seems that the defendants did not keep a record of their liabilities or bills payable on their permanent books. In their effort to ascertain the liabilities of the corporation, the auditors called upon defendant Walters for this information. Grannis, Blair, and Campbell all testify that Walters furnished certain invoices which he represented showed all the liabilities of the company. They say that when a list of the debts was compiled from this data, such list was shown to Walters, and he told the auditors that the list was complete, making one correction. Walters denies this, but the preponderance of the evidence is against him.

Other facts appear in the record, all of which we have considered; but we cannot undertake to review them. While it is contended that from materials at hand, the auditors might have compiled a complete statement of the liabilities of the company, the weight of the proof is that they were dependent on Walters for such knowledge and that he examined the list of debts gotten up and pronounced this list correct. It is conceded that the statement of liabilities prepared by the auditors was not correct and that the complainants, who purchased on the faith of this statement, had to pay a large amount of indebtedness incurred by the corporation and not reported to them.

While the complainants made some personal investigation of the corporation into which they bought and considered matters other than the audit, nevertheless they

had a right to rely on the audit.  Their action was very largely influenced certainly by their confidence in the truth of such audit.  They were therefore entitled to maintain this action.

"If a party represents as true, that which he knows to be false in such a way and under such circumstances as to induce a reasonable man to believe that it is true and it is meant to be acted on, and the person to whom the representation has been made believing it to be true acts upon the faith of it and by so acting sustains damages, such representation is fraudulent and will sustain an action by the party damaged." *Wynne* v. *Allen,* 7 Baxt. (66 Tenn.), 312, 32 Am. Rep., 562.

See, also, *Horrigan* v. *First National Bank,* 9 Baxt. (68 Tenn.), 137.

When, therefore, Walters stated to these auditors that the list of debts they had gotten up was complete, knowing that this list was to be submitted to complainants, under the circumstances heretofore detailed, and the complainants acted on the information thus acquired, which turned out to be untrue, Walters and those whom he represented became liable to the complainants for the damage complainants sustained on this account.

An action for fraud and deceit differs from one brought for rescission, in that the plaintiff must prove in the former that the representation was false and the person making it knew it to be false, while in the latter plaintiff need only show that a misrepresentation was made and it is immaterial whether made dishonestly or not.  *Hindman* v. *First National Bank,* 112 Fed., 931, 50 C. C. A., 623, 57 L. R. A., 108; *Wynne* v. *Allen,* supra; *Horrigan* v. *First National Bank,* supra.

Nevertheless, as stated in *Horrigan* v. *First National Bank,* supra, there may be cases where a party would be liable for stating as true with a view and purpose to influence another party that which he did not know.

To justify the recovery in this case it is not necessary that Walters should have absolutely known that the statement of liabilities compiled by the auditors and approved by him was false. If he approved this statement without belief in its truth or recklessly, careless whether it was true or false, the result would be the same. This court has more than once in unreported cases approved and followed the rules laid down by Lord HERSCHELL in *Derry* v. *Peek,* L. R. 14 App. Cas., 337 as follows:

"First, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground; for one who knowingly alleges that which is false has obviously no such honest belief."

There has been much controversy in the case as to the proper measure of damages.

Campbell owned one-fourth of the stock when this trade was made. Campbell and Shwab, therefore, purchased three-fourths of the stock from defendants. The chancel-

lor allowed Campbell and Shwab to recover as damages three-fourths of the difference between the amount of the liabilities of the corporation as listed on the auditor's report and the actual liabilities. We think the defendants cannot complain of this.

There is quite a conflict among the authorities as to the proper measure of damages for misrepresenting the value of corporate stock sold. The same conflict exists as to the proper measure of damages for misrepresenting the value of land and other property sold. One line of decisions holds that the measure of damages is the difference between the actual value of the thing sold and its value had the facts been as represented. Another line of decisions holds that the measure of damages is the difference between the actual or real value of the thing sold and the contract or sale price. The cases are collected in note 43 L. R. A. (N. S.) 373.

This court has adopted the rule first mentioned. *Hogg v. Cardwell,* 4 Sneed (36 Tenn.), 151; *Smith v. Cozart,* 2 Head (39 Tenn.), 526; *Augur v. Smith,* 90 Tenn., 729, 18 S. W., 398; *Blair v. A. Johnson & Sons,* 111 Tenn., 111, 76 S. W., 912. Our decisions are in accord with the weight of authority. 27 C. J., 92; Mechem on Sales, section 1843; Clark and Marshall on Corporations, vol. 3, p. 1865.

The actual value of the stock of this corporation was intrinsically as much less its represented value as the indebtedness of the corporation reported by the auditors was less than its actual indebtedness.

Under either rule for measuring damages, in a case of this sort, we should look to the real value of the stock rather than its market value in estimating the recovery. There may be no market value or the market may be in-

Shwab v. Walters.

fluenced by the same fraud that influenced the purchaser. *Hindman* v. *First National Bank,* supra, and cases cited.

For the reasons stated we find no error in the chancellor's decree, and it will be affirmed.