## CRISMAN v. McMURRAY.

### (*Jackson.*    June 24, 1901.)

1. JURY TRIAL. *Issue for, in Chancery Court.*

The statutory provision, in relation to jury trials in the Chancery Courts, that the issues shall "set forth briefly and clearly the true questions of fact to be tried," requires that the questions or propositions submitted for the jury's determination shall be of such character that the decision of each of them will be conclusive upon the merits of the entire case or of some distinct branch of it, and forbids submission to the jury, as distinct and separate issues of collateral, immaterial or subordinate questions of fact, whose decision would be inconclusive as to the merits of the case or any distinct branch of it. (*Post, pp. 470–472.*)

Code construed: § 6285 (S.); § 5218 (M. & V.); § 4468 (T. & S.).

Cases cited: McElyá v. Hill, 105 Tenn., 319; Cheatham v. Pearce & Ryan, 89 Tenn., 670.

2. SAME. *Evidence improperly considered by jury.*

It is reversible error for the jury, even by accident and wholly without fault of themselves, or of the parties or their attorneys, to take out and use during their deliberations the stenographic report of the testimony of one of the parties of a most material character delivered before them orally, not having any such report of the testimony of the other party or of any other witness. (*Post, pp. 472–474.*)

Cases cited: Railroad v. Lee, 95 Tenn., 388.

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

---

---

CARROLL & McKELLAR, for Crisman.

GANTT & PATTERSON and SMITH & TREZEVANT for McMurray.

CALDWELL, J. This is a suit in equity between partners for a settlement of a co-partnership in buying and selling cotton at Memphis. The complainant sought a large recovery against the defendant and demanded a trial by jury. Giving effect to the verdict, the Chancellor pronounced a decree in favor of the defendant and against the complainant for $4,143.56. Complainant appealed.

At the threshold of our investigation we encounter an error in practice for which the decree must be reversed. That error consists in the submission and trial of one hundred and ninety-one (191) so-called issues, presenting separately and almost exclusively a mere controversy as to some isolated and in itself inconclusive fact. The proper practice requires that issues submitted to a jury in the Chancery Court should be such as go severally to the decision of the entire case, or some distinct branch thereof, upon its merits. *McElya* v. *Hill*, 105 Tenn., 319.

The Chanceller, whose action was complained of in *Cheatham* v. *Pearce & Ryan*, 89 Tenn., 670, had made a rule for the demand of the jury and the formulation of issues for its trial in his Court. One requirement of that rule was that "each issue shall embrace only one question of fact," meaning,

no doubt, only one decisive or conclusive question of fact, and, in that view, being reasonable and proper. But the propriety of that requirement was not in fact considered by this Court, the assignment of error directed against it being deemed insufficient to raise the question, and being overruled for that reason. 89 Tenn., 683.

Section 4468 of the Code (M. & V., 5218; Shan., 6285), referring to issues for jury trial in the Chancery Court, provides that "the issue shall be made up by the parties under the direction of the Court, and set forth briefly and clearly the true questions of fact to be tried." These concluding words, "the true question of fact to be tried," signifying those controlling questions of fact whose decision will determine the real merits of the controversy, and do not include those of an immaterial, collateral, or inclusive nature. A mere dispute, or a difference between the statements of witnesses on a given point, is not, under the statute, a true question of fact, or a proper subject for a separate issue, unless it is so central and far-reaching that its decision will control the final disposition of the cause as a whole or in some distinct branch. Any number of points in evidence, tending severally to establish a controlling, controverted fact, should be covered by one issue, and not submitted separately in as many different issues. The latter course was largely pursued in this cause. Whether or not

such controlling fact really exists, is a *true* question of fact and the proper subject of a single issue.

There is another reversible error in the record. Both parties to the litigation testified orally before the jury. By oversight a typewritten copy of the stenographer's notes of the defendant's testimony in chief was at the conclusion of the argument left on the table in the court room, and with the papers properly belonging to the case it improperly went into the hands of the jury, without the knowledge of either litigant, or any of their counsel, or any sinister motive on the part of any one. It was really an accidental occurance, not realized at the time. The next day one of defendant's counsel learned the fact and in the utmost good faith promptly procured a typewritten copy of the stenographic notes of his client's cross-examination and sent it to the clerk and master to be handed to the jury. This was done to prevent any prejudice that might otherwise result to the complainant from the jury's consideration of the report of the defendant's testimony in chief, without that of his cross-examination. It was a creditable act and unquestionably mitigated the injury that the complainant might have suffered had the counsel been less thoughtful. However the evil consequences of the jury's reception and consideration of the report of the examination in chief was not entirely cured by the mitigating tendency of the report of the cross-examination. Besides no part of the report of either

was legal evidence, there being no provision of law or agreement of parties making it so. Therefore no part of either could properly be considered by the jury. The witness had delivered his evidence orally and the jury was authorized to consider it in no other form. Not only was the written report of the defendant's testimony illegal as evidence, because not authorized by law or agreement to be so used, but the accident, as it may well be termed, by which that part of it covering the examination in chief reached the jury seems really to have been prejudicial to the complainant whose testimony rested alone in the memory of the jury. The majority of the jurors stated after the verdict that during their prolonged deliberation upon the many close and difficult questions submitted to them, they had frequent recourse to that paper as the best and most satisfactory means of ascertaining exactly what the defendant had said in reference to such of those questions as were so close that they could not easily reach a conclusion otherwise. In short, the jurors regarding this paper as a part of the evidence in the case naturally used it freely, and especially upon matters of account involving many figures not so easily carried in the mind from oral testimony, they quite as naturally, though it may be unintentionally, gave it more probative force than their recollection of what the complainant had orally said about the same matter.

In any view to be fairly taken of the facts recited it seems clear that without the fault of any one the defendant has had, unsought, advantage of the complainant before the jury.

As an ancient invocation of the time-honored rule that both adverse litigants are entitled to the like impartial hearing, learned counsel for the complainant quote one of the early sentences of Demosthenes on the Crown as follows; ''I pray, likewise, and this specially concerns yourselves, your religion and your honor, that the gods may put it in your minds not to take counsel of my opponent touching the manner in which I am to be heard. That would indeed be cruel. But of the laws and of your oath, wherein, (besides the other obligation) it is prescribed that you should hear both sides alike.''

Authorities are abundant for the proposition that the consideration of a material paper not introduced in evidence, but being submitted to the jury by accident, as in this instance, is ground for reversal. Some of them are, *Whitney* v. *Whitmore*, 5 Mass., 405; Thompson and Merriam on Juries, Sec. 386: *Railroad* v. *Lee*, 95 Tenn., 388.

In the last case this Court said :

'' It was error, also, for the jury to examine and consider diagrams not introduced in the evidence.'' 95 Tenn., 390.

For the reasons stated the decree is reversed and the cause is remanded for a new trial.

Crisman *v.* McMurray.

The record presents a case peculiarly suited for an account before the Master, but the complainant is entitled to another trial before a jury if he desires it.

In the latter event issues will be made up under the rule announced herein.

Since both parties are equally responsible for the multiplicity of the issues heretofore submitted, and equally blameless for the accidental reception of the authorized report of the defendant's testimony in chief, each of them will pay one half of the costs of the appeal.