COOPER & KEYS *v.* L. HARROD BELL.

(*Nashville.*   December Term, 1912.)

1. **CHANCERY PLEADING AND PRACTICE.** Fact of relationship of attorney and client charged in bill and admitted in answer is erroneously submitted to jury as an issue.

In a chancery suit by attorneys to recover compensation for professional services, it was error to submit to the jury an issue whether the relationship of attorney and client existed between the complainants and defendant, at the date of their alleged contract, where such relationship was alleged in the bill and admitted in the answer, it matters not who tendered the issue. (*Post, pp.* 144-150.)

Code cited and construed: Sec. 6285 (S.); sec. 5218 (M. & V.); sec. 4468 (T. & S. and 1858).

Cases cited and approved: Wood v. Zeigler, 99 Tenn., 517; Burton v. Association, 104 Tenn., 416; McElya v. Hill, 105 Tenn., 319; Crisman v. McMurray, 107 Tenn., 469; Pile v. Carpenter, 118 Tenn., 288.

2. **ATTORNEY AND CLIENT.** Relationship is extremely delicate and fiduciary, and the attorney will be held to the utmost good faith.

The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned, and the courts jealously hold him to the utmost good faith in the discharge of his duty. (*Post, p.* 150.)

Cases cited: Bank v. Hornberger, 4 Cold., 531; McMahan v. Smith, 6 Heisk., 167; Newman v. Davenport, 9 Bax., 538.

3. **SAME.** Attorney's recovery is upon quantum meruit, and not on contract, where it is not fair, and is not understood by both in same sense.

Where the attorney contracts with his client for further professional services, the contract,-whether oral or in writing, must be

Cooper v. Bell.

just and reasonable and free from all exorbitancy, and its meaning and effect must be fully understood by the client, and must be understood by both of them in the same sense, and this must be clearly shown by the proof; otherwise, the attorney's recovery of compensation must be upon the *quantum meruit*, and not upon the terms of the contract. (*Post, pp.* 150, 151.)

Cases cited and approved: Bank v. Hornberger, 4 Cold., 531; McMahan v. Smith, 6 Heisk., 167; Newman v. Davenport, 9 Bax., 538.

4. **SAME. Contract for fee equal to one-half of secured reduction of decree for five thousand dollars required to produce income to pay wife's alimony is unenforceable as unreasonable, when.**

Under a disputed contract to pay attorneys one-half of whatever reduction they might secure on a decree requiring their client to pay into court five thousand dollars to be lent out and the interest paid to his wife monthly, in order to discharge a lien on his land under a decree requiring him to pay his wife twenty-five dollars per month as alimony during her natural life, with an expectancy of twenty-three years, under which contract the attorneys claim the sum of twenty-five hundred dollars upon the ground that they procured a reversal and a dismissal of the wife's case, and a divorce for their client (the husband), it was *held* that the amount of the fee was not fixed upon any sound or just basis, and that such contract was unenforceable as being unreasonable and exorbitant; and it appearing that another attorney in the case was willing and able capably to perform the identical services for two hundred and fifty dollars. (*Post, pp.* 151, 152.)

5. **SAME. Court is not bound by testimony as to value of services of attorneys, when.**

The court is not bound by what witnesses testify would be reasonable compensation to attorneys for certain professional services rendered, where the court does not agree with the judgment of such witnesses. (*Post, p* 152.)

FROM CUMBERLAND.

Appeal from the Chancery Court of Cumberland County.—A. H. ROBERTS, Chancellor.

DORTON & BURNETT and E. G. TOLLETT, for complainants.

L. D. HILL, FRANK McELWEE, and GEORGE W. CLINE, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

It is only necessary to consider one of the assignments of error in order to dispose of this case, and that one is the fourth, to wit:

"There is no evidence in the record to support the finding of the jury on the fourth issue, and the chancellor erred in not setting it aside and granting a new trial."

The fourth issue was:

"Did the relation of attorney and client exist between the complainants, Cooper & Keys, and the defendant L. Harrod Bell at the date of the alleged contract set out in complainants' bill."

This issue ought never to have been submitted to the jury. It was not an issue of fact in the cause. The complainants' original bill showed the fact to be that

the relation of attorney and client did exist between complainants, the attorneys, and defendant, the client, at the very time of the alleged making of the contract set out and sued on in that bill. The same allegations of facts are also in complainants' amended and supplemental bill. Each of these bills was sworn to, and, this being true, the court could not hear complainants in the same cause dispute by their evidence the truth of facts solemnly averred in their bills. In other words, it did not lie in complainants' mouths to aver the truth of these facts in their bills and dispute the truth thereof by their evidence; they were concluded by the averments in their bills. And, furthermore, the relationship averred by the bills to exist at the time of the making of the contract sued on was admitted by the defendant's answers, not in so many words, but so clearly as to have precluded defendant by his proof from denying the fact. Therefore, proof on either side was unnecessary as to that fact, and it was not in issue. See Gibson's Suits in Chy., sec. 455, where that author says:

"In strictness, any fact alleged by one side and admitted by the other in their respective pleadings is not in issue and need not be proved, whether the admission be express or constructive." On the same point, see *Wood* v. *Zeigler,* 99 Tenn., 517, 42 S. W., 447.

But this point was overlooked by the learned chancellor, who permitted this fourth issue to be made up and submitted to the jury, and admitted evidence on behalf of the complainants to the effect that, at the time

the contract sued on was made, the relationship of attorney and client did not exist between them and the defendant; and thereupon the jury, by its verdict, found that at such time the relationship did not exist. Yet all the while, when the issue was made up when the complainants testified, and when the jury rendered its verdict, there were solemn averments in each of the bills of complainants clearly to the effect that the truth was exactly contrary to the verdict.

It matters not who tendered issue No. 4. The fact that it was submitted to the jury makes it an error of the court; for it is clear that it was no a proper issue, and the duty was upon the chancellor to see that proper and material issues, and only such, be submitted to the jury.    Section  6285,  Shannon's  Code;  *Burton v. Farmers' Association,* 104 Tenn., 416, 58 S. W., 230, and authorities cited. See, also, *McElya* v. *Hill,* 105 Tenn., 319, 59 S. W., 1025; *Crisman* v. *McMurray,* 107 Tenn., 469, 64 S. W., 711, and *Pile* v. *Carpenter,* 118 Tenn., 288, 99 S. W., 360.

The present case was a suit by Cooper and Keys, as partners in the practice of law, against defendant, Bell, based upon an alleged contract by which complainants claim $2,500 as a fee for professional services rendered Bell. These services, as disclose by the bill, came about in this way:

Bell was defendant in a divorce suit in the circuit court of Cumberland county, and employed complainants to assist Judge G. B. Murray in the defense thereof; and, so associated, complainants and Judge Murray, as

Bell's attorneys, filed for him an answer and cross bill by way of defense to the divorce bill. Upon trial, Bell was cast in that suit, and decree went against him, dismissing his cross bill and requiring him to pay Mary C. Bell, his wife, $25 per month as alimony during her natural life, and she was granted a divorce from bed and board until the further order of the court; and the decree fixed a lien on certain lands of defendant, and so incumbered the same that Bell could not defeat payment of the alimony by sale or the incumbrance of the land, but provided that:

"Upon proper application being made by the defendants in this cause, he will be permitted to sell and dispose of a sufficient quantity or part of said real estate from which the sum of $5,000 may be realized; or he may furnish the said sum of $5,000, which sum will be loaned under the orders of the court, and in a manner satisfactory to the complainant, at the rate of six per cent. per annum interest, which said interest shall be collected monthly, and the same applied in payment of alimony aforesaid."

The cause was retained in court for the enforcement of the decree, and the costs adjudged against Bell.

The bill shows that Bell appealed from the decree of the circuit court to the court of civil appeals, and after his appeal had been perfected and the transcript filed in such court, that Bell discharged Judge Murray and made with the complainants the contract sued on in the present cause, by which they say Bell agreed to pay complainants for services already rendered by

them, and those thereafter to be rendered in the divorce suit, one-half of whatever reduction they might secure on the $5,000 which Bell was required to pay into court in order to have the lien discharged from his land, and that Bell also agreed to pay them $100 for expenses; and complainants say that, acting on that contract, they prepared and filed assignments of error and a brief in the court of civil appeals, and there tried the cause, one member of the firm making two trips to Nashville to attend the court; that, by the decree of the court of civil appeals, the judgment of the circuit court was reversed, and the original bill for divorce by Mary C. Bell dismissed, and the defendant, Bell, was granted an absolute divorce upon his cross bill; that Mary C. Bell prosecuted her petition for *certiorari* from the judgment of the court of civil appeals, but the same was dismissed; and so the divorce suit was finally terminated in favor of defendant, Bell.

And so complainants say in their bill that, by the terms of the contract, they became entitled to the sum of $2,500 from defendant, Bell. By way of defense to the present suit, the defendant demurred, but his demurrer was overruled; and it need not be further noticed. He then answered, in substance, that complainants had rendered him certain services in the divorce suit, but denied *in toto* that he ever made with them the contract sued on, and denied any liability thereunder, but admitted that, after the case was tried in the circuit court, and before the trial in the court of civil appeals, complainants agreed to accept from him $100

in cash for services to that date, and such services as they should render him in the court of civil appeals, but that, in the event that court should reverse the case, complainants, as an additional fee, were to have from him a deed to an undivided one-half interest in a 100-acre tract of land in Cumberland county, but that, after the reversal of the case by the court of civil appeals, complainants represented to him that they were hard pressed for money and prevailed on him to pay them $250 in lieu of the deed to the one-half interest in the land, and that this, together with the $100 which he had paid before, made the sum of $350, which was all their services were reasonably worth; and he relied on this settlement in bar of their suit, and said that, in any event, they could only recover the value of their services.

Later an amended answer was filed, which need not be noticed.

Later still, he filed another amended answer, again denying that he made the contract sued on, but setting up that such employment of them as existed for them to represent him in the court of civil apeals occurred during the existence of a previous relationship of attorney and client between them.

Upon these pleadings the cause was tried before the chancellor and a jury impaneled at the instance of defendant. Certain issues were submitted to the jury, among which was the issue numbered 4, already commented upon. There was no finding of the fact, either by the jury or the chancellor, that the sum of $2,500 was a fair and reasonable fee for the services rendered

by complainants, but, on the verdict, a decree for that sum, with interest, went down for the complainants, and from that decree defendant appealed and has assigned errors.

The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned. The attorney is an officer of the courts in which he is a practitioner, and courts jealously hold him to the utmost good faith in the discharge of his duty. This is true where his advice and direction are required in dealings between his client and a third party, and also where the dealing is between the attorney and his client.

Some of our cases, where the relations between attorney and client have been discussed, are as follows: *Planters' Bank of Tennessee et al.* v. *J. G. Hornberger et al.*, 4 Cold., 531; *McMahan* v. *Smith*, 6 Heisk., 167; *Newman* v. *Davenport*, 9 Baxt., 538.

In the first-named of these cases, it was said by this court, in substance, that, where an attorney deals with his client for further professional services, and the contract between them is reduced to writing, and the attorney seeks to enforce it, he must show that the client fully understood its meaning and effect, and that each of them understood it in the same sense; otherwise the contract cannot be enforced. 4 Cold., 573. He must also show that his contract is just and reasonable and free from all exorbitancy of demand. See *McMahan* v. *Smith*, and *Newman* v. *Davenport*, supra.

The same principle should apply **where the contract rests in parol; and the recovery should be upon the**

*quantum meruit,* and not upon the terms of the contract, wherever it is not clear from the proof that the parties understood alike the meaning and effect of the contract.

Such a rule tends to prevent, in a measure at least, such unseemly contests as the present suit. Tested under the above rule, the contract set out in complainants' bill is unenforceable. It is, upon its face, unreasonable, exorbitant, and improbable. It calls for a fee out of all proportion to the amount and value of the service rendered. At the time it was made, if in fact made, neither the attorneys nor the client knew what would be the length of the natural life of Mary C. Bell; whether she would live out her expectancy of twenty-three years, or die in a day or an hour, was entirely beyond their range of knowledge. The extent of Bell's liability, under the divorce decree, depended upon the length of her life; so it is manifest that the extent of his liability to her, and the extent to which that liability might be reduced, was no sound or just basis for fixing a fee; nor was the deposit of $5,000, which, under the decree, he might or might not make at his option, a fair or just basis on which to make the amount of the fee depend. It was not a liability at all, but a privilege accorded by the decree, of which he might avail when he desired to free the land from the lien.

That either of these matters should have been made the basis for fixing the fee is both absurd and improbable on the face of the contract, and without resort to

the proof.   But, from the latter, it is a clear and undis-
puted fact that the defendant could have had the very
capable services of Judge Murray for a cash fee of
$250, and that the Judge stood ready for that sum to
render the identical services for which these complain-
ants are now claiming ten times that amount, and that
$250 was a fair and reasonable fee for the services
rendered by complainants.   It is against reason to
believe that, under these circumstances, and knowing
the sum for which Judge Murray was willing to serve
him, defendant would have put himself in the way
to be called on to pay ten times that sum.   We do not
agree with the judgment of those witnesses who say for
complainants that $2,500 was reasonable compensation
for complainants services.   There is no view of this case
under which such a charge can be held fair and reason-
able, as we see the record.

No case could better illustrate than this one does the
justice and wisdom of the rule laid down by this court
in the *Hornberger Case,* supra, and the extension of that
rule, as we have, to parol contracts.   Complainants, by
their proof, do not make it at all clear to us that the
defendant understood the contract between them to be
as it is stated in the original bill.   On the contrary,
there is no doubt in our minds that he understood it as
he states it in his answer.   He states in his evidence
that lack of ready cash was his reason for not employ-
ing Judge Murray; and his contract with complainants,
as he contends it to be, required a smaller outlay of
cash.

Cooper v. Bell.

For the reasons stated, we hold that complainants cannot recover on the contract set out in their bills and the case must be reversed and a new trial awarded

Upon the new trial the only questions, as we see the case, are whether or not the contract was as defendant's answer states it, and, if so, then what amount, if any, is due and unpaid to complainants. If the contract was not as the answer states it, then the measure of the complainants recovery would be the fair and reasonable value of the services rendered by them to the defendant in the divorce suit, not upon the basis of a contingent fee, but upon the basis of an implied agreement to pay a fair and reasonable fee; and the balance due, if any, under this measure of recovery should be ascertained as an issue of fact.

If the new trial is before a jury, proper issues covering these questions can be formulated; but we are constrained to say that, in questions such as these, we regard it as much better practice for parties to leave the whole matter to the judgment of the chancellor, or, at all events, such questions of disputed fact as were at issue on the pleadings could have been settled by a reference to the master, and his report, reviewed by the chancellor, would have reached a just result much more effectively than the course which was taken in this case.

Reversed and remanded.

JUDGE LANSDEN, being incompetent by reason of having presided as chancellor upon the hearing of the demurrer, did not take part in the consideration of this case.