### NOONE v. FISHER et al.
### No. 260.

District Court, E. D. Tennessee, S. D.
June 29, 1942.

Chas. C. Moore, of Chattanooga, Tenn., for plaintiff.

Whitaker, Hall, Haynes & Allison, of Chattanooga, Tenn., for defendant.

DARR, District Judge.

An attorney at law has brought this action seeking to recover a fee from a receiver of a national bank for alleged services rendered in the collection of a promissory note.

Prior to 1933, the plaintiff was an attorney for the First National Bank of Chattanooga on a retainer of $220.00 a month. He handled collections for this

Bank and received in addition to his retainer any fees that he might collect under note contracts obligating the payees to pay such fee.

While this arrangement was in effect, there was placed with the plaintiff for collection the indebtedness of the American Textile Woolen Mills at Sweetwater, Tennessee. The amount of this indebtedness was large and the condition of the Mills was bad.

In accord with a practice of the Bank in such cases, the president thereof procured the authorities for the Mills to retain the plaintiff as the attorney for the Mills. The plaintiff was so retained on a salary of $200.00 per month and expenses.

This arrangement continued up until the time the First National Bank ceased to do business about the first of 1933 and was succeeded by the Chattanooga National Bank. The same arrangement continued while the Chattanooga National Bank operated and on up until March 16, 1933, when said Bank closed and a conservator took over. The conservator was in charge of the Bank from this time until November 6, 1933, when a receiver was appointed.

The right of the plaintiff to recover will depend on whether he had a contract to perform the services claimed with the conservator during his term as trustee and whether he had a contract for such services with the receiver. The plaintiff claims that he did have either an express contract, a contract implied in fact, or a contract implied in law.

■ There is no proof to indicate the relationship between the plaintiff and the conservator or receiver which would result in a so called contract implied in law, or quasi-contract. A quasi-contract is not based on the apparent intention of the parties, but is an obligation created by law, such as the liability of a husband for necessary clothing and supplies furnished a wife.

■ So, if the plaintiff is entitled to recover, it must be upon an express or implied contract. There is no difference in legal effect between express and implied contract, the distinction involved lies merely in the mode of manifesting assent. An express contract is where the assent is set out in words or other mode of expression, whereas an implied contract is where the assent is shown by the conduct of the parties.

There is nothing in this record to indicate any contract between the conservator and the plaintiff.

■ The mere fact that the plaintiff still retained the collection against the Woolen Mills would not set up any contractual relation with the conservator. In fact, the plaintiff himself said in his testimony that there was a "hiatus" between the time the conservator was appointed and the time the receiver was appointed.

This position is substantiated by the testimony of Judge Sam E. Whitaker and Honorable Estes Kefauver wherein each testified that at a conference held with the plaintiff after the appointment of a receiver, the plaintiff indicated that there was nothing due him from the trust. This position was also set out in a letter written by these witnesses to the receiver soon after the conference. I think it rather plain that there is nothing owing the plaintiff for any services during the time the conservator was in charge of this trust.

After the receiver was appointed, there was certain action taken indicating that there was a recognition by the receiver that the plaintiff had this particular collection as the receiver's representative.

This came about by the calling of a conference with the plaintiff by the receiver and his regular attorneys.

The plaintiff had some fifty-three claims that he had received from the First National Bank and continued by the Chattanooga National Bank. The conference was to work out what claims would be retained by the plaintiff for collection and what claims would be withdrawn.

In a letter from the receiver's regular attorneys, it was recommended that the claim in question be withdrawn from the plaintiff.

The plaintiff contends that thereafter he had a conference with the receiver and the receiver told him to continue to handle this claim. The receiver makes denial of this agreement but his testimony in this regard is not very clear.

Some eighteen months after the appointment of the receiver and on June 20, 1935, the receiver wrote a letter to the plaintiff stating that this particular claim along with others was withdrawn from his hands.

Some explanation is offered by the receiver as to why this letter was written at this late date. However, this explanation,

in my opinion, cannot weigh against this documentary evidence.

██ Taking this situation together with the whole circumstances, it is my judgment that there was set up a contract between the receiver and the plaintiff from the time of the appointment of the receiver until the time this letter was written.

██ After this letter was written and received by the plaintiff, he claims that he had another conference with the receiver and that an agreement was reached whereby he was to continue to handle this claim. The receiver makes positive denial of such agreement.

Under such situation, the documentary evidence and all the circumstances and inferences will have to be taken into consideration to ascertain whether the plaintiff makes out a case of contract under the quantum of evidence required by law.

There is no doubt but what the plaintiff did a great deal of effective work in handling the affairs of the American Textile Woolen Mills. This work inured to the benefit of this trust as well as to the benefit of other creditors of the Mill. But it is to be remembered that the plaintiff was, during all this time, the attorney for the Woolen Mills at a salary of $2,400 per annum and expenses.

While there seems to be some effort made to minimize this retainer fee in connection with the amount of work done, it is my opinion that it was a substantial retainer, one that most any lawyer would have been pleased to have.

After a careful review of the record, and a study of the exhaustive briefs, it is my judgment that the facts and circumstances to be considered to set up the contract are not sufficient to accomplish such purpose. There are some circumstances that would indicate that the contract was in effect and there are equally strong circumstances to indicate that the contract was not in effect.

██ The dual representation by the plaintiff of the Bank and later the trust and the Mills put him in a very delicate position. It is quite obvious that the interest of the payor and the payee of this note might conflict at any time. Under such circumstances, I think the proof would have to be clear and concise that there was a recognition of such dual representation before there could be a recovery.

So, it is my judgment that the plaintiff is not entitled to recover from the conservator for the reasons heretofore mentioned.

I think that the plaintiff is entitled to recover from the receiver for services rendered between the time of the appointment of the receiver and the letter withdrawing the claims, which letter is dated June 20, 1935. That thereafter, he is not entitled to any compensation because no contract has been proven between himself and the receiver.

██ The amount of this compensation is to be based, of course, upon the amount of the claim, the work done, and results accomplished. I can hardly see how the collection of a note could be based on a monthly retainer.

██ As I understand, in a suit for attorney's fee, the amount is peculiarly within the discretion of the court because the attorney is an officer of the court.

██ It is my judgment that a fee of $1,500 will be fair and reasonable in view of all the circumstances.

Such recovery is awarded and a proposed judgment may be submitted. Also, the court requests a submission of a proposed findings of fact and conclusions of law.